PELEG ROSE *vs*. THE PERSSE & BROOKS PAPER WORKS.
PELEG ROSE AND ANOTHER *vs*. THE SAME.

Where the owner of premises upon which a builder's lien has attached, has conveyed away his interest in the premises, it is not necessary to make him a party to a bill to foreclose the lien.

The statute with regard to a builder's lien provides that the builder shall file in the office of the town clerk a certificate of his lien, which shall "describe the premises." A party having a lien on one of three paper mills, which were near each other, and belonged to the same owner, but were independent and susceptible of a separate description, described the premises on which the lien was claimed, as "two tracts of land situated in the town of *W*, one bounded [&c.,] with two paper mills thereon, and the other bounded [&c.,] with one paper mill thereon," and described the lien as "for materials furnished and services rendered in the erection and repairs of said several paper mills." Held, that the certificate was void as not containing a reasonably accurate description of the premises within the meaning of the statute.

A party having a builder's lien took notes for the amount of his claim, and gave a receipt as follows:—"Received of *P. & B.* two notes, [describing them,] in full."—Whether the lien was not discharged thereby : *Quere*. The court inclined to the opinion that, in the absence of proof that the receipt did not express the real understanding of the parties, it must be taken to mean that the notes were received in payment, and be regarded as discharging the lien.

The statute gives a lien for materials furnished and services rendered in the *construction, erection or repairs* of any *building*. Where the materials and labor furnished were in the equipping with fixed machinery for the manufacture of paper, a building intended in its erection as a paper mill, but which was in itself a complete and independent structure, it was held that they could not be regarded as furnished for the construction or reparation of a building, and that no lien attached to the premises in favor of the party furnishing the same.

BILLS for the foreclosure of builders' liens on three paper mills belonging to the defendants. The facts in the two cases are similar in all essential points, a part of the work and materials for which the liens were claimed having been furnished by the petitioner Rose individually, and a part by the copartnership of Rose & Vaughn, of which he was a member, who were the petitioners in the other bill. A statement of the case of the petitioner Rose will therefore be sufficient.

The three paper mills, at the time when the lien was claimed to have commenced, in October, 1856, belonged to a copartnership by the name of Persse & Brooks, who continued to own the same until August 1, 1857, when they conveyed

the same to the respondents, a joint stock corporation then formed, the deed being immediately put upon record. The three mills were severally called the Atlantic, the Pacific and the Anchor mill.

The Pacific and Atlantic mills stood on adjoining lots, of which Persse & Brooks held two different leases, executed, the one in 1854, and the other in 1857, each for nine hundred and ninety-nine years. The Anchor mill was about seven hundred feet from the others, on a lot by itself, separated from the other mills by lands not owned by Persse & Brooks. On the 13th of October, 1856, the Anchor mill was destroyed by fire. The plaintiff carried on business, at Norwich, as a manufacturer of machinery, and immediately after the fire was employed by Persse & Brooks to superintend the refitting of the mill with first class paper-making machinery. The plaintiff was also carrying on the foundry business at Norwich, in company with A. H. Vaughn, and the understanding was that the castings should be supplied by Rose & Vaughn, that they should be fitted by the plaintiff at his works in Norwich, and there be prepared and made ready to be put up, and that the plaintiff should personally superintend the setting up of the machinery at Windsor Locks, and put the mill into operation. The plaintiff proceeded, in pursuance of this contract, to furnish machinery and superintend the fitting up of the mill. The machinery was shipped at Norwich to Persse & Brooks, the freight was paid by Persse & Brooks, and they paid for all materials furnished and work done at Windsor Locks. On the 8th of September, 1857, the mill being nearly completed, the plaintiff presented his bill up to August 1st, which was then examined and adjusted, and the following receipt given. The notes were also given, as specified in the receipt. These notes had never been paid, and at the time of the trial belonged, and had always belonged, to the plaintiff. The receipt was as follows:—

" Received, New York, Sep. 8, 1857, from Persse & Brooks, three notes, at four, five and six months, for seventeen hundred and thirty 6-100 dollars each, being in full for all bills to the first day of August, 1857.          PELEG ROSE."

At the time of the settlement, September 8th, it was understood that the mill was not quite fully completed, and also that the plaintiff's account from August 1st to September 8th remained to be adjusted, and the plaintiff was then directed by Persse & Brooks to proceed and do what further was needful to complete the mill. The plaintiff proceeded accordingly, and was entitled to charge Persse & Brooks the sum of $50 for superintendence from August 1st to September 25th. The first charge of the plaintiff to Persse & Brooks in August, 1857, was August 20th, for boring worm gear; from August 20th to September 5th, the plaintiff's charges, connected with the worm gear, amounted to $43.55, and from September 5th to September 25th, to $6. These charges were justly made to Persse & Brooks, under the agreement. The worm gears were forwarded to Windsor Locks in September, 1857, for the use of the Anchor mill, and were duly received; but the evidence on the subject of the actually putting up and fixing to the building of said gearing, was so indefinite, that nothing further was found than that they were received by Persse & Brooks, at Windsor Locks, for the use of the mill. During the early part of the time that the plaintiff was furnishing machinery for the Anchor mill, he also furnished some articles of the like kind, of small value, for the other paper mills of Persse & Brooks; no separate account was kept of these articles, but all went into one account. The plaintiff on the trial did not claim a lien for any articles furnished for the other mills, or any lien on any mill except the Anchor mill.

The plaintiff, on the 10th of October, 1857, filed the following certificate of his lien, which was subscribed and sworn to, and put upon record, according to law :—

" To all whom it may concern : These presents certify that I, Peleg Rose, of the town of Norwich, in the county of New London, do claim to have a lien on and against all those certain paper manufacturing buildings, with the land on which the same are situated, and the appurtenances thereof, bounded and described as follows, to wit: two certain tracts of land situated in the town of Windsor Locks, in the county of Hart-

Rose *v.* Persse & Brooks Paper Works.

ford, one of said tracts bounded north, south and west by lands now or late of the Connecticut River Company, and on the east by Connecticut river, with two paper mills thereon; the other tract bounded north on lands of Hannibal A. Converse, east by Connecticut river, south by land of Connecticut River Company and highway leading to Warehouse Point, and west by land of said Connecticut River Company, with one paper mill thereon; for the sum of ten thousand nine hundred and ninety and 18-100 dollars, ($10,990.18,) being the amount now justly due to me, the said Rose, for materials furnished and services and labor done and performed by me in the erection, construction, and repairs of said several paper mills, their fixtures and appurtenances; and that I commenced furnishing said materials and performing said service and labor on or about the 16th day of October, 1856, and ceased so to do on the 5th day of September, A. D., 1857. Said materials were furnished, and services and labor performed, at the request of Persse & Brooks, a copartnership doing business under that name in the city, county and state of New York, the proprietors of said land and buildings." Dated at Hartford, October 10th, 1857.

The articles furnished and put up by the plaintiff, under the agreement, consisted of the machinery of a first class paper mill, and attached and secured as is common in such factories, comprising heavy boilers, engines, pumps, hoisters, shafting, worms and worm wheels, and gearing, attached, for the most part, to the structure of the building, by large bolts, and so that it could not be removed without serious damage to the building.

The respondents pleaded in bar that Persse and Brooks had, on the 1st of August, 1857, by deed duly executed and recorded, conveyed the entire estate to the respondents, for the full consideration of $450,000, which was the full and agreed value of the estate irrespective of any lien of the plaintiff thereon, and that the conveyance was made to and accepted by the respondents upon the agreement of Persse & Brooks that they would pay the claim, if any, of the plaintiff and save

the respondents and the estate harmless therefrom ; and that Persse & Brooks had not been made parties to the bill, and that no proper decree could be rendered in the case so long as they were not parties ; and prayed that the bill be dismissed. The plaintiff demurred to this plea, and the court held it insufficient. The respondents then filed an answer, setting up the same facts, denying the facts alleged in the bill, and averring that, if the plaintiff ever had the lien claimed in his bill, the same had been discharged by him. The plaintiff demurred to that part of the answer which related to the omission to make Persse & Brooks parties, denied the discharge of the lien, and joined issue upon the general denial of the answer. Upon these pleadings the court found the foregoing facts, and reserved the case for the advice of this court.

*T. C. Perkins* and *C. E. Perkins*, for the petitioners.

1. It was not necessary to make Persse & Brooks parties. *Swift* v. *Edson*, 5 Conn., 531. *Crocker* v. *Higgins*, 7 id., 342. *Wendell* v. *Van Rensalaer*, 1 Johns. Cha., 344. Story Eq. Pl., §§ 173, 189, 197. 2 Hilliard on Mort., 79, note *a*. 2 Swift Dig., 195.

2. The articles furnished by the petitioners were fixtures, and therefore are to be considered as a part of the building, and as a proper subject of a lien under the statute. The rule between the present parties is the same as that between mortgagor and mortgagee. *Goodman* v. *White*, 26 Conn., 317. It is much more favorable to a mortgagee than that between landlord and tenant. *Swift* v. *Thompson*, 9 Conn., 63. *Snedeker* v. *Warring*, 2 Kernan, 170. *Despatch Line* v. *Bellamy Manufacturing Co.*, 12 N. Hamp., 205. *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet., 137. *Buckley* v. *Buckley*, 11 Barb., 43. *Winslow* v. *Merchants' Ins. Co.*, 4 Met., 306. *Butler* v. *Page*, 7 id., 40. *Elwes* v. *Maw*, 3 East, 38. The rule is the same as between heir and executor. *Union Bank* v. *Emerson*, 15 Mass., 159. Articles that are so attached to a building that they can not be detached without injury to it, are fixtures. *Teaff* v. *Hewitt*, 1 Ohio S. R., 511. *McKim* v. *Mason*, 3 Maryl. Ch., 186. *Providence Gas Co.* v. *Thurber*, 2 R. Isl., 15. *Powell* v. *Monson Manufacturing*

*Co.*, 3 Mason, 347. *Whiting* v. *Brastow*, 4 Pick., 310. In the case of mills, articles used in it, and which are an essential part of it, so that without them it would not be such a mill, are fixtures. *Winslow* v. *Merchants' Ins. Co.*, 4 Met., 306. *Farrar* v. *Stackpole*, 6 Greenl., 154. *Parsons* v. *Copeland*, 38 Maine, 537. *Voorhis* v. *Freeman*, 2 Watts & Serg., 116. *Murdock* v. *Harris*, 20 Barb., 407. *Farrar* v. *Chauffetête*, 5 Denio, 527. *House* v. *House*, 10 Paige, 158. *Gray* v. *Holdship*, 17 Serg. & R., 413. *Wilde* v. *Waters*, 32 Eng. L. & Eq., 422.

3. The certificate of the lien was filed in season and is valid. It was filed on the 10th day of October. It is found that articles were furnished within sixty days preceding that date. It is not necessary that these articles should have been actually set up in the building; it is enough if they were delivered under the contract ready to be used. *White* v. *Miller*, 18 Penn., 52. *Odd Fellows' Hall* v. *Masser*, 24 id., 507. *Greenway* v. *Turner*, 4 Maryl., 296. *Cornelius* v. *Uhler*, 2 P. A. Browne, 229. *Case of Olympic Theatre*, id., 275. The certificate is not invalidated by its including other land besides that on which the lien existed. *Bank of Charleston* v. *Curtiss*, 18 Conn., 342. *Driesback* v. *Keller*, 2 Penn. S. R., 77. *Tinker* v. *Geraghty*, 1 E. D. Smith, 687. *Edgar* v. *Salisbury*, 17 Missouri, 271. *Hillburn* v. *Obarr*, 19 Geo., 591.

4. The lien was not discharged as to the account before August 1, 1857, by taking the notes and giving the receipts. *Bolles* v. *Chauncey*, 8 Conn., 389. The statute makes the building holden for the debt, without reference to the form in which it exists. The substitution of the notes for the account did not pay the debt. The receipts moreover show that it was only notes and not money that was received. It therefore appears upon the face of the receipts themselves that the debt was not paid.

*L. F. Robinson* and *C. E. Fellowes*, with whom was *F. Fellowes*, for the respondents.

1. Persse & Brooks should have been made parties, and no decree can properly be made until they are brought in. Our plea and answer allege that their conveyance to us was

not a conveyance of an equity of redemption, but of the entire estate irrespective of any lien, that we paid them $450,000, the full and agreed value of the premises, and that it was agreed that they should pay the plaintiffs' claim and save us harmless therefrom. The plaintiffs, by their demurrer, admit this to be true. In effect, therefore, Persse & Brooks still remain in equity interested in the estate on which the liens' are claimed to exist, since they are liable to refund to us, out of the price paid them for the estate, whatever shall be found to be a valid lien upon the premises. 1 Daniell Cha. Pl. & Pr., 292, 317, 329, 332. Story Eq. Pl., §§ 173, 174, 176, 177, 177 a, 178, 180, 153. *Watson* v. *Wells*, 5 Conn., 468. *Greenwood* v. *Atkinson*, 4 Simons, 54. *S. C.*, 5 id., 419. *Lesquire* v. *Lesquire*, Rep. Temp. Finch, 134. *Knight* v. *Knight*, 3 P. Wms., 331. *Bressenden* v. *Decreets*, 2 Ch. Ca., 197. 2 Maddock Ch., 154. Calvert on Suits in Equity, 151. *Penfold* v. *Nunn*, 5 Simons, 407. *Stokes* v. *Clendon*, 3 Swanston, 150. *Riddle* v. *Manderville*, 5 Cranch, 322. *Wiser* v. *Blachly*, 1 Johns. Ch., 437. *Newman* v. *Kent*, 1 Merivale, 240. *Thompson* v. *Baskervill*, 3 Rep. in Cha., 215.

2. The plaintiffs are not within the class of persons entitled to liens by virtue of the statute, the materials and services not having been furnished in *erecting, constructing or repairing a building.* The statute giving the lien confines it expressly to such a case. Acts 1855, p. 96, sec. 1. No persons fall within the terms and intent of the statute except the original contractors and sub-contractors. The provisions of the 4th and 5th sections show this. The plaintiffs are neither contractors or sub-contractors in the construction or reparation of a building. The statute was designed for the benefit of builders, and liens are given to sub-contractors furnishing materials, for the simple purpose of enabling builders to obtain credit. *Burst* v. *Jackson*, 10 Barb., 219. *Iron Manufacturing Co.* v. *Bynum*, 3 Sneed, 265. *Lambard* v. *Pike*, 33 Maine, 141. *Hatch* v. *Coleman*, 29 Barb., 201. The materials furnished were the castings furnished by the plaintiffs, Rose & Vaughn, and charged on account to Persse & Brooks, at so much per pound. The castings were delivered by Rose & Vaughn to Rose, to be wrought into machines in

his shop at Norwich. This was in effect a delivery to Persse & Brooks, and the title to the castings was complete in them from the moment of such delivery. The materials were not therefore furnished in pursuance of any contract for the erection, &c., of any building, but by virtue of a mere contract of sale and purchase. Further, the services rendered, (except the superintendence,) were work and labor performed by workmen of the plaintiff Rose, at his shop at Norwich, upon the castings, and charged in account to Persse & Brooks at so much per hour. The machinery made from the castings by this work and labor was consigned to common carriers at Norwich, to be carried to Persse & Brooks, they paying the freight. The title was complete in Persse & Brooks upon such consignment. As it respects the materials, there is nothing to distinguish the contract from a mere contract of sale and purchase, and as it respects the services, from a mere contract of hiring work and labor.

Neither contract was a contract for the erection or reparation of a building, with an original contractor for that purpose, nor between any such original contractor and a subcontractor. The finding does not show that there was any contract for the erection, construction, or repairs of any building, or of any of its appurtenances. As to the superintendence of the setting up of the machinery at Windsor Locks, this is not service on the erection, construction, or repairs of a building, within the meaning of the act; it is a mere supervision of service performed by workmen employed by Persse & Brooks and paid by them. The court so finds. *Jones* v. *Shawhan*, 4 Watts & Serg., 264.

3. The plaintiffs did not file their certificates of lien within sixty days after ceasing to provide materials or render services, as required by the statute. The certificates were filed on the 10th of October. No materials or services which would sustain a lien were furnished after August 1st. On that day, Persse & Brooks conveyed the premises to the respondents, and the plaintiffs are affected by the record notice of the deed. After that time they could not look to the property, but only to Persse & Brooks, their debtors, for payment for further ser-

vices and materials. Especially is this so since these services and materials were not in part performance of their former contract, which they might have been obliged to render as a condition precedent to their right to recover, but were wholly independent of that contract. *Spaulding* v. *Thompson Eccl. So.*, 27 Conn. 573. The superintendence of the workmen of Persse & Brooks was not the subject matter of a lien. The worm gear, furnished after August 1st, was never put into the mill. It was merely forwarded to Persse & Brooks, at Windsor Locks, and received by them, but never set up. The respondents clearly can not be chargeable with a lien for this. *Phillips* v. *Wright*, 5 Sandf. 342. *Taggard* v. *Buckmore*, 42 Maine, 77.

4. The certificates filed in these cases are *void*. The statute requires the claimant to file a certificate describing the premises and the amount claimed as a lien thereon. He has done neither, but has filed false certificates. The premises described in the certificates are not the premises upon which the liens are claimed to exist, and the amounts described are not the amounts claimed as liens thereon. The premises described are three paper mills. The premises on which the liens are claimed are one separate distinct paper mill. The amount described is the amount due for services rendered and materials furnished in the erection and reparation of the three mills. The amount for which the liens are claimed is the amount due for one separate and distinct mill. *Young* v. *Chambers*, 15 Penn., 266. *Goepp* v. *Gartiser*, id., 130. It is said that the description embraces the premises upon which the liens are claimed, and that those parts of the description not relating to those premises may be rejected as surplusage. The answer is that the claimant has made these parts material, by certifying that the lien is one entire lien covering the entire premises described. The immaterial matter, as it is called, is made part of the description both of the premises and of the amount claimed as a lien, and is thus made material. Gould's Pleading, 160, § 183. A description of the whole town of Windsor Locks would embrace the premises on which the lien is claimed. But such a description clearly

would not be a description of the Anchor mill, according to the requirement of the statute. As the lien is created by the statute, and the continuance of its existence depends upon compliance with the statute, this non-compliance absolutely destroys it. The cases stand just as they would if the plaintiffs had entirely omitted to file certificates.

5. If the plaintiffs ever had the liens claimed, they have extinguished them. In both cases they have given receipts *in full.* "In full" means in *full payment.* The receipts, therefore, prove that the notes were expressly agreed to be payment, and that the debt was discharged. Besides, irrespective of the question whether the notes were received as payment, the receipts, by their own force, operated as a release. *Jones* v. *Shawhan,* 4 Watts & Serg. 257, 263. *Hurd* v. *Blackman,* 19 Conn., 177.

HINMAN, J. The debts which the plaintiffs in these cases claim as incumbrances upon the defendants' paper mill were contracted by Persse & Brooks, the former owners of the property, as individuals. And the defendants first make the question, whether bills for foreclosure can be sustained without Persse & Brooks being made parties to them. But ever since the case of *Swift* v. *Edson,* 5 Conn., 531, it has been considered well settled that a mortgagor who has parted with his interest in the mortgaged property need not be made a party to a bill to foreclose. The object of such a suit is to effect the property, not the debt; and, after assignment, the mortgagor has no longer any interest in that to be affected. So far as the foreclosure may incidentally operate to extinguish the debt, it is for his benefit. He would therefore have no interest in defeating the foreclosure, and not being a party, and, therefore, not bound by the decree, his rights can in no event be impaired. The same principle is applicable to the case of the assignor of property on which a builder's lien has attached. After assignment, he has no longer any interest to be protected, and the circumstance that his deed contains covenants which may render him liable if the property was incumbered, can make no difference. If he is ever called

upon for any claim arising out of any such covenants, he will be left with the same means of defending against it as if no decree, affecting other parties, had passed in reference to the property. This objection therefore must be overruled.

Upon the merits of these cases, however, we think the plaintiffs must fail, on several grounds which we will mention. In the first place, the certificates lodged with the town clerk cover too much property. The statute requires that certificates of this sort "shall describe the premises," which we think these do not, within the meaning of the statute. The most that can be said in their favor is, that the property on which the lien is claimed is included in the description, with much other property on which no lien was ever claimed in respect to these debts. Now, one object of the statute, in requiring a description to be given, was that the public, by an examination of the record, might be able to learn on what precise property the lien was claimed. This object is entirely defeated if such a description as this is valid. We have no occasion to say, and do not intend to say, that where a party by mistake includes more land than he can hold subject to his lien, his certificate will be void. That probably would be deemed too harsh a construction of the language of our statute, which is probably different from the statute under which the Pennsylvania cases, cited by the defendants, were decided. We do not regard those cases, therefore, as applicable here. But where the certificate is either intentionally false, or so grossly inaccurate as to show that there was no attempt to give an accurate and true description, then, if the statute means any thing, the certificate ought to be held void, as no better than a total omission to attempt to comply with its provisions.

The premises claimed as subject to the lien are a paper mill, entirely separated from the two other paper mills, included with it in the certificate, by the intervening property of third persons. There was, therefore, no difficulty in describing it by itself. If it should be held to be sufficiently described, we do not see how it could be held otherwise had it included all the property in the village. Indeed, there is no way to deliver

the transaction from the imputation of an attempt to mislead in the description, except to suppose that it was thought sufficient, if the description was extensive enough to include the property on which the lien was in fact intended to be claimed. On this ground, therefore, we feel constrained to hold that the certificate was void, and that it lays no foundation for the continuance of the lien on the premises.

We are inclined to think also that the plaintiffs' accounts for labor and material furnished in these cases, up to the first of August, were discharged by the notes taken at that time, and the receipts given on account of them. The receipts, according to the case of *Hurd* v. *Blackman*, 19. Conn., 177, operated, like releases at common law, to discharge the claims. We are aware that this is a peculiar effect given to receipts in full in this state, but it has always been practiced upon here, and results from the principle that such a receipt may be pleaded in bar of an action, and will require an answer to avoid it. *Tucker* v. *Baldwin*, 13 Conn., 136. As there was nothing to show that the receipts did not express the real understanding and agreement of the parties, and as they are expressly said to be "in full," which, notwithstanding the argument of counsel to the contrary, we think, unexplained, can mean nothing less than full payment, we are satisfied that they must be held to be substantially a discharge of so much of the accounts as accrued previous to the first day of August, 1857.

But perhaps the most satisfactory answer to both the claims arises from the fact that the labor and materials furnished by the plaintiffs, were not furnished for the purpose of constructing or repairing any building. We have no occasion here to lay it down, as a general proposition, that fixtures, or fixed machinery, can in no case be so connected with the construction or repair of a building as to be entitled to the protection of our lien law. If they are of such a character that, in the exercise of reasonable care and skill, they can not be as well affixed or annexed to it at any other time as during the operation of the work upon the building, and they are thus affixed or annexed to it by the mechanic who is constructing or repairing it, as incidental to his work of constructing or re-

pairing a building which is to be used for some purpose which renders such annexations proper or necessary, perhaps a fair construction of our statute, under which the interests of mechanics and builders were undoubtedly the principal object, would require us to place such annexations or fixtures upon the same footing as work upon the structure itself. However this may be, it is quite obviously a very different case from the one presented to us at this time. In these cases the materials and work were in no part furnished or performed as incidental to the construction or repair of the building, but, the building being an independent structure, the plaintiffs contracted, not to repair it, but to put into it certain fixed machinery, and fit it to the building. This clearly is not within the language of the statute, and would require a strained construction to bring it within its spirit or intent. It is not work usually or ordinarily furnished by builders, but by an entirely different class of mechanics, which, as we suppose, it was not the intention by this statute to furnish with any peculiar advantages in respect to the security of their claims.

The other points made in the case of course become of no importance to the result, and are therefore not intended to be decided. We advise the superior court on the whole case, that for these reasons the defendants are entitled to the decree of the court dismissing the bills.

In this opinion the other judges concurred.

Advice that bills be dismissed.