ASAHEL CHAPIN AND ANOTHER *vs.* THE PERSSE AND BROOKS PAPER WORKS.

Under the acts of 1849 and 1852 which give a lien upon buildings to parties furnishing materials for their erection or repair, it is not necessary that the parties furnishing materials should be also contractors or subcontractors for such erection or repair.

The mere sale of building materials, without reference to the building in which they are to be used, does not create a lien upon the building in which they are in fact afterwards used.

Nor is a lien created upon a building for which materials are expressly furnished, if they do not in fact go into the building.

A lumber dealer sold lumber for three paper mills belonging to the same owner, which were undergoing repairs, two upon one piece of land and the third upon a separate piece, keeping a separate account of the lumber furnished to each. He afterwards filed a certificate of his lien, describing the three mills together, and his lien as one lien upon the whole, and stating the whole amount due him as the amount of his lien. Held that the certificate was void, both in respect to the description of the premises covered by the lien, and in respect to the statement of the amount.

The policy of the law favors an equal distribution of the effects of a failing debtor among his creditors, and the statute which, by giving a lien to certain creditors, gives them a preference, is to be construed with reasonable strictness.

Whether, where a party having a lien under the statute, takes the notes of the debtor for the amount due, and gives a receipt in full of the account, the lien is discharged thereby : *Quere.* The remarks of the court on this subject, in the case of *Rose* v. *Persse & Brooks Paper Works*, 29 Conn., 267, are not to be taken as expressing the opinion of the court that such would be the effect.

BILL for the foreclosure of a lien for materials furnished to three paper mills in the town of Windsor Locks belonging to the defendants. The facts were found by a committee to whom the case was referred.

The mills at the time when the materials were furnished were being constructed by, and were the property of, Dudley Persse and Horace Brooks, partners under the name of Persse & Brooks, and were sold and conveyed by them, with their interest in the land on which they stood, to the present defendants, a corporation, about the time the buildings were completed. The mills were known respectively by the names of the Atlantic, the Pacific and the Anchor mill. The Atlantic and Pacific mills stood on adjoining lots of land ; the Anchor

mill on a lot by itself, separated from the other mills by lands owned by other parties. All the land was held by Persse & Brooks under a lease of nine hundred and ninety-nine years, the land on which the Anchor mill stood having been acquired in 1843, that on which the Pacific mill stood in 1855, and that on which the Atlantic mill stood in 1857. The three mills were used together by Persse & Brooks for the manufacture of paper in the different stages of the process, but the Anchor and Pacific mills were each so fitted with machinery that the whole process might have been carried on in either of them, and the Atlantic mill could easily have been supplied with the necessary machinery for that purpose.

Previous to January 1, 1857, the petitioners, who were dealers in lumber in the town of Windsor Locks, made a contract with Persse & Brooks to furnish them such an amount of lumber and other materials as should be wanted for the erection of additions to and for the reparation of the three paper mills, which lumber and other materials were to be delivered by the petitioners to the workmen employed by Persse & Brooks on the mills, from time to time as they should want them. The petitioners were requested by Persse & Brooks to keep separate accounts of the materials furnished to the separate mills, which they did. Under this agreement the petitioners furnished materials for the three mills from the 1st day of January, 1857, to the 24th of September of that year, the whole amounting to $2,921.81. During this time they received sundry payments, leaving the balance due on the 9th of October, $2,036, for which they held three notes of Persse & Brooks, given them at different settlements made during that time. These notes were payable at bank to the order of the petitioners four months from date, and they had procured two of them, amounting to $1,573.15, discounted upon their indorsements, and at the time the certificate was filed these notes were held by the Charter Oak Bank, of Hartford, which had discounted them. Persse & Brooks failed to pay them when due, and they had been taken up and were held by the petitioners when the petition was brought. When the notes were given the accounts had been receipted by the petitioners—

in one case in the following form: " Received payment by notes, June 6, 1857.   A. & W. Chapin ; " in another as follows: " July 3, 1857, Received payment.   A. & W. Chapin ;" in the other as follows: " Paid by note, date August 10th, four months.   A. & W. Chapin."   A later bill was paid in cash.

On the 9th of October, 1857, the petitioners filed the following certificate of lien, which was subscribed by them, and sworn to, and put upon record according to law :—

" To whom it may concern :—This certifies that we, Asahel Chapin and Warren Chapin, Jr., both of Windsor Locks, county of Hartford, and state of Connecticut, partners under the name and firm of A. & W. Chapin, dealers in lumber &c., have and hold a lien on the land and buildings standing thereon, to wit :—Three paper mills and stock house situated in said town of Windsor Locks, owned and occupied by Persse & Brooks, by virtue of a lease from the Connecticut River Company, our lien being a claim for materials furnished on and for the erection, completion and repairing of said buildings, to the amount of $2,370.50, as nearly as we can at present ascertain. Said land consists of two pieces ; first piece bounds north, west and south on land of Connecticut River Company, east by Connecticut river, and with two paper mills and other buildings thereon ; second piece bounds north on land of H. A. Converse, east on Connecticut river, south by highway leading to the Warehouse Point ferry, and west by land of Connecticut River Company.   (See lease recorded in Windsor Locks' records, book of manuscripts, Vol. 1, pages 97, 98, 99, &c., for more particular description.)   The commencement of our furnishing said materials was January 1st, 1857, and our contract for furnishing said materials ceased September 29th, 1857.   Said materials were furnished by us for said Persse & Brooks, a firm consisting of Dudley Persse and Horace Brooks, of the city, county, and state of New York. Dated, Windsor Locks, October 9th, 1857."

The stock house mentioned in the certificate stood on other land, and was not embraced in the contract under which the materials were furnished, but was included in the certificate

in good faith and in the belief that it stood upon the same lot. The certificate was filed in all respects in good faith.

Of the unpaid balance of the indebtedness of Persse & Brooks to the petitioners, $1,470.72 was for materials furnished for the Anchor mill, $419.64 for materials furnished for the Pacific mill, and $145.64 for materials furnished for the Atlantic mill. A portion of the materials furnished by the petitioners was used by Persse & Brooks, while the work was in progress, for the construction and reparation of sundry articles of movable machinery and tools to be used in the mills and for the stock house mentioned in the certificate. The petitioners had no knowledge which of the materials were so used, or to what amount. The exact quantity that went into the mills themselves, in the construction of the additions and in the repairs, could not be ascertained, but the amount exceeded $1,460.

Upon these facts the case was reserved for the advice of this court.

*T. C. Perkins* and *C. E. Perkins*, for the petitioners.

1. The statute expressly gives a lien to persons furnishing materials for the erection or repair of a building. The petitioners fall within the letter as well as the spirit of the statute, and it can not be necessary that they should be contractors or sub-contractors. Acts of 1849 and 1852 ; Rev. Stat., (Comp. 1854,) 644.

2. The certificate filed by the petitioners was a valid one. It is claimed to be invalid by reason of its including the stock house, which stood on other land, and embracing the three mills and the two pieces of land on which they stood. As to the stock house, it was an appurtenance to the mills, and the lumber was in part used for it, so that the petitioners were entitled to a lien upon it. It was also on adjoining land close to the mills, and is found to have been included in the certificate in good faith, and in the belief that the lien covered it. If there was a mistake in this respect it ought not to vitiate the certificate. *Bank of Charleston* v. *Curtiss*, 18 Conn., 347. *Rose* v. *Persse & Brooks Paper Works*, 29 Conn., 256.

As to the three mills, with the lots upon which they stood, it is to be considered that there was one contract for furnishing materials to all. It is unlike the case of *Rose* v. *Persse & Brooks Paper Works*, in this respect, as there there were two pieces of land included, while there was a lien upon only one. The present case is like that of materials furnished under a single contract for an entire block of stores or dwellings. It is even a stronger case inasmuch as these three mills were used together as one mill. Each was appurtenant to the others, and one of them could not be used in any other way. It was in fact all one establishment. The keeping of the separate accounts was only for the accommodation of Persse & Brooks. There is no more reason why two lots or two buildings may not be included in one certificate of lien, than why they may not in one mortgage or attachment. There are no authorities which hold that this can not be done, except some late cases in Pennsylvania; but these cases rest upon the peculiar pro-visions of their statute. Before the enactment of their pres-ent statute it was held otherwise. *Thomas* v. *James*, 7 Watts & Serg., 381. *Lanman's Appeal*, 8 Penn. S. R., 473. *Edgar* v. *Salisbury*, 17 Missouri, 271. *Hillbarn* v. *Obarr*, 19 Geo., 591. The case of *Bank of Charleston* v. *Curtiss*, before cited, confirms our claim. If it was not proper to embrace all the mills in the same certificate, it was yet done in entire good faith, and in the belief that it was the only proper course, and the certificate should not be vitiated by the mistake, especially since no injury has resulted to the respondents. They have become the owners of the entire property, and it is a matter of no importance to them whether they are to pay the entire debt as a single lien upon the three mills or as three separate liens. It is also claimed that the certificate is void because the amount is not stated with substantial accuracy, inasmuch as the claim for the materials that went into the stock house is included, and also the amount of the whole lien is given instead of the separate amounts of each lien. But this obviously could not affect these respondents, who had taken the whole property and were bound to pay the whole debt, and since the statement was made in good faith and in

the belief of its correctness it was all that the statute intended to require.

3. The petitioners are entitled to a lien on the mills for all the materials furnished, although a part of them went into the stock house and a part was used for the construction of moveable machinery. It *is* enough that they contracted to furnish the materials for the mills, and delivered them for that purpose. They could not watch them afterwards to see how they were applied. Indeed they had no further control over them. The title had vested in the purchasers. Suppose the materials furnished under an express contract for the buildings and in reliance upon the security of the lien, had been sold by the purchasers or had been attached by their creditors ; in such a case would the petitioners have lost their lien? The lien attaches at the time of the commencement of the delivery of the materials, showing that it has already attached, the moment they are delivered. It has been repeatedly held that the furnishing of the materials is enough, without reference to the use that is afterwards made of them. *Wallace* v. *Melchior*, 2 P. A. Browne, 104. *Case of the Olympic Theatre*, id., 275. *Hinchman* v. *Graham*, 2 Serg. & Rawle, 170. *Odd Fellows' Hall* v. *Masser*, 12 Harris, 507. *Greenway* v. *Turner*, 4 Maryl., 296.

4. The lien is not discharged by the taking of the notes and the giving of the receipts. The taking of a note of the debtor does not of itself discharge an account even at law. It only suspends the remedy. *Bill* v. *Porter*, 9 Conn., 23. And it does not discharge a builder's lien. *Graham* v. *Holt*, 4 B. Monr., 61. *Miller* v. *Moore*, 1 E. D. Smith, 739. *Thompson's case*, 2 P. A. Browne, 297. *Butts* v. *Cuthbertson*, 6 Geo., 166. *Crean* v. *McFee*, 2 Miles, 214. Nor does it discharge a vendor's lien on land when taken for the purchase money. *Thornton* v. *Knox's Exrs.*, 6 B. Monr., 74. *Garson* v. *Green*, 1 Johns. Ch., 308. *Fish* v. *Howland*, 1 Paige, 20. Nor a lien on a vessel for supplies. *Bark Chusan*, 2 Story, 455. *Schooner Active*, Olcott, 286. *Allen* v. *King*, 4 McLean, 128. *Moore* v. *Steamboat Fashion*, 1 Newb., 49. And the signing of a receipt of payment, or even a receipt in

full, does not discharge the lien. *Moore* v. *Newbury*, 6 McLean, 472. *Montandon* v. *Deas*, 14 Ala., 33. *Thornton* v. *Knox's Exrs.*, 6 B. Monr., 74. *Goble* v. *Gale*, 7 Blackf., 218. *Greene* v. *Ely*, 2 G. Greene, 508. *Sutton* v. *The Albatross*, 2 Wallace Jr., 327. *Jones* v. *Shawhan*, 4 Watts & Serg., 257. *Wheeler* v. *Schroeder*, 4 R. Isl., 383. And the discounting of the note, so that the title to it vests in another party, does not discharge the lien. *Graham* v. *Holt*, 4 B. Monr., 61. *Sweet* v. *James*, 2 R. Isl., 270. *Teaz* v. *Chrystie*, 2 E. D. Smith, 621. *Althause* v. *Warren*, id., 657. *Davidson* v. *Borough of Bridgeport*, 8 Conn., 472.

*F. Fellowes* and *C. E. Fellowes*, for the respondents.

1. The plaintiffs are not within the class of persons entitled to liens by virtue of the statute ; the only persons so entitled being original contractors for the erection or repair of buildings and sub-contractors, the plaintiffs being neither. The very words of the statute, (Sec. 1,) define the persons entitled to liens to be those who have claims for services rendered, or materials furnished, " *in erecting, constructing, or repairing buildings or appurtenances to buildings.*" A person who has merely sold materials to the owner to go into a building, but who has himself had nothing to do with the erection or repairs of the building, can not be regarded as coming within these terms. The provisions of the fourth and fifth sections of the act show clearly that no other persons than contractors or sub-contractors are intended. The persons required by Sec. 4th to give notice, are obviously persons who have no contract with the owner, for if they were in privity with him no notice could be required, any more than in the case of the original contractor or of sub-contractors whose contracts are assented to in writing by the owner. These persons are, therefore, clearly sub-contractors, and not mere venders of materials to the owners. Again, the amount of the liens is limited in section 5th, by the amount agreed to be paid by the owner to the original contractor. Were it designed to secure every person who sells to the owner materials for a building, the lien would be commensurate with the price of the materials. The statute

was designed for the benefit of builders, and liens are given to sub-contractors furnishing materials for the simple purpose of enabling builders to obtain credit. *Burst* v. *Jackson*, 10 Barb., 219. *Iron Manufacturing Co.* v. *Bynum*, 3 Sneed, 268. *Hatch* v. *Coleman*, 29 Barb., 201. *Greenwood* v. *Tennessee Manufacturing Co.*, 2 Swan, 130. *Sweet* v. *James*, 2 R. Isl., 270. The plaintiffs were merely dealers in lumber. As such, on a verbal order from Persse & Brooks, owners of the mills, to furnish them such an amount of lumber as they should require from time to time, they delivered to their workmen, as they called for them, the materials embraced in the accounts. The materials so furnished were charged to Persse & Brooks, and were worked up by workmen employed by them, the plaintiffs having nothing further to do with them after their delivery. The materials were not therefore furnished in pursuance of any contract for the erection or repair of any building, but by virtue of a mere contract of sale and purchase.

2. The lien created by the statute can not exist unless the materials are actually used in the buildings. The finding in this case does not show what amount of materials, unpaid for, was actually used in the buildings embraced in the certificate. Nor does it show what amount was used upon each separate mill. A large portion of the materials included in the accounts, and in the amount of $2,370.50 claimed as a lien upon the premises, was used by Persse & Brooks in the construction and repairs of various articles of moveable machinery and implements used by Persse & Brooks in the manufacture of paper in the mills, and which never went into the buildings. A portion of them was used upon the stock house, which does not stand upon the premises described in the certificate. Clearly the plaintiffs can have no lien upon the buildings for the materials so used. *Rogers* v. *Currier*, 13 Gray, 129. *Lambard* v. *Pike*, 33 Maine, 141. *Phillips* v. *Wright*, 5 Sanf., 342. *Taggard* v. *Buckmore*, 42 Maine, 77. If it is said that the plaintiffs are entitled to a lien for the amount of materials actually used in the buildings, it is suffi-

cient to reply that it is impossible to separate these articles from the accounts ; that payments were made on account, largely exceeding the amount fixed by the committee as the value of the materials used in the buildings, and that for aught that appears to the contrary these payments may all have been applied in payment of the materials so used.

3. The certificate filed in this case is void. The statute requires the claimant to file a certificate describing the premises and the amount claimed as a lien thereon. The premises described in the certificate are not the premises upon which the lien is, in fact, claimed to exist, and the amount described is not the amount claimed as a lien thereon. The premises described are " three paper mills and stock house." The premises on which liens exist, if at all, are three separate, distinct mills. The stock house does not stand upon the land described, but upon a separate piece not owned by the defendants. The amount described in the certificate is the amount due for materials furnished in the erection and repairs of the three mills and stock house. The amounts for which liens exist, if at all, are the amounts due for each separate and distinct mill. The materials were furnished for each mill by itself. A separate account was kept by the plaintiffs with each mill, and the finding shows the exact amount of materials furnished for each mill. *Young* v. *Chambers*, 15 Penn. S. R., 266. *Goepp* v. *Gartiser*, 35 id., 130. *Rose* v. *Persse & Brooks Paper Works*, 29 Conn., 256. It is said that the decription embraces the premises upon which the liens are claimed, and that those parts of the description not relating to those premises may be rejected as surplusage. The answer is that the claimants have made these parts material by certifying that the lien is one entire lien covering the entire premises described. The immaterial matter, as it is called, is made part of the description both of the premises and of the amount claimed as a lien, and is thus made material. Gould Pl., 160, § 183, *et seq*. If *A* contracts with *B* to build for him three houses on three distinct pieces of land by distinct contracts, agreeing to pay him so much for each house, would a certificate describing the entire premises and the entire amount

be a good certificate ? Obviously, such a certificate would convey no true information to the public. As the lien is created by the statute and the continuance of its existence depends upon compliance with the statute, this non-compliance absolutely destroys it. The case stands just as it would if the plaintiffs had entirely omitted to file the certificate.

4. If the plaintiffs ever had the lien claimed they have extinguished it. 1st. By giving receipts. The receipts prove that the notes were expressly agreed to be payment and that the debt was discharged. Besides, irrespective of the question whether the notes were received as payment, the receipts, according to the case of *Hurd* v. *Blackman,* cited below, by their own force, operated as a release. *Jones* v. *Shawhan,* 4 Watts & Serg., 263. *Hurd* v. *Blackman,* 19 Conn., 177. *Rose* v. *Persse & Brooks Paper Works,* 29 id., 256. 2d. By transferring the negotiable notes taken for the debt. The notes, to the extent of $1,573.15 in amount, had been unconditionally transferred by the plaintiffs to the Charter Oak Bank, and were held by that bank when the certificate was filed. This transfer extinguished the lien. The lien is personal in its nature, and not transferable by the transfer of the notes. It is a peculiar one, being designed simply for the personal protection of mechanics, who from the nature of their occupation are exposed to peculiar dangers. It is not necessary to secure this object that the lien should be assignable or negotiable. It was not the purpose of the statute to create a negotiable security, since the object of the statute did not require it, and it has not done so in express terms. *Pearson* v. *Tinker,* 36 Maine, 384. *Harris* v. *Schooner Kensington,* 8 Am. Law Register, 144, (Jan., 1860.) If the lien be not transfered with the notes it is destroyed. It can not remain in the original payee, since he has absolutely parted with the debt upon which the lien is predicated, and the lien can not exist separate from the debt. *Harris* v. *Johnson,* 3 Cranch, 311.

HINMAN, C. J. The plaintiffs, who are dealers in lumber, seek to foreclose a lien claimed by them on three paper mills

at Windsor Locks, for the lumber furnished by them for the purpose of repairing the mills. The defendants first make the question whether the plaintiffs are within the class of persons entitled to the privilege of having their debts secured by liens on buildings erected or repaired. It is said that the statute only applies to the cases of contractors or sub-contractors for the erection or repair of buildings, and that as the plaintiffs are neither, but only ordinary venders of lumber, they therefore have no lien; and the fourth and fifth sections of the statute are referred to, as showing that the statute is inapplicable to any other persons. There is not much light thrown upon the question by the language of the fourth section, but in reference to both of them, all that need be said is, that they were enacted at the time the original statute on the subject of mechanics' liens was first passed. That statute did in fact confine the right to a lien to the cases of contractors or sub-contractors for the erection of buildings; and in 1849, when the later statute was passed, which in very explicit terms extends this right of lien to the cases of any person or persons who shall have a claim for materials furnished for the construction of any dwelling house or other building, these sections were not altered. These sections therefore have no application to material-men and laborers unless they are also contractors, and should only be applied to the cases contemplated when they were passed. The short statement of the argument in answer to the claim is, that these sections applied to the law as it existed up to 1849, which did not provide for any lien except in favor of contractors or sub-contractors; that it was then extended so as to include material-men and laborers, and in 1852 was extended so as to include the claims of persons for services and materials in the reparation as well as the erection of buildings ; and these extensions of the law, where the intention is clearly expressed, can not be affected by the language of the old law, which is inapplicable to it now in respect to the persons to whom it has been extended. We must of course be governed wholly by the present statute, and consequently this claim of the defendants can not be sanctioned.

Another claim made by the defendants is, that the plaintiffs'

account is not for lumber furnished for the construction or repair of the paper mills, but that, as dealers in lumber, they furnished to the owners of the mills such an amount as from time to time they required, and that, thus furnished, it was a mere general sale of the lumber without any expectation at the time by either party that there was to be any lien on the buildings into which it might be put. Perhaps there is some foundation for this claim. We certainly should feel bound to examine it with care if the case depended upon it. Obviously, as we think, it never could have been intended that the mere general sale of building materials should create a lien upon the buildings upon which they afterwards happened to be used. But whether the contract upon which this lumber was furnished varies from such a sale, we have not thought it necessary to determine, because there are other grounds which we think fatal to the plaintiffs' case.

It appears from the report that a portion of the lumber furnished by the plaintiffs never went into either of the defendants' mills. It is insisted for the plaintiffs that it is sufficient to entitle them to a lien if it was furnished for the mills; that as they had no control over it after it was delivered for that purpose, they ought not to be prejudiced by any misuse of it. We think this claim of the plaintiffs can not be sustained. The theory of the lien is, that the party furnishing materials for the erection or repair of buildings on credit retains his claim to them after they have gone into the building, and to enable him to enforce it his lien is spread over all the property with which the materials have become inseparably connected. Hence he is given a lien upon the whole building and the land on which it stands. But to give a lien for all the materials sold for the purpose of going into the building, irrespective of the actual use of it for that purpose, might have the effect of creating a lien to the full value of the building, and the land on which it stands, in favor of parties whose property did not in fact any of it go into the building, and thus the persons who had in fact erected or repaired the building, or who had done work upon it, would be deprived of any advantage from the liens given them by the statute. Such surely ought

not to be, and as we believe was never intended to be, the result in any case. We think, therefore, that to entitle the furnisher of the materials to a lien, his property must not only be furnished for the erection or the repair of a building, but must actually go into the building and be used for that purpose. This however would not be decisive of the whole case, as the committee finds that, though the exact amount can not now be ascertained, yet the plaintiffs' property did go into these mills to an amount exceeding $1,460 ; and we do not see why, if they were on other grounds entitled to a lien for the amount which actually did go into the buildings, they would not be entitled to a decree for this amount, although it may be that other property which they furnished for the same purpose was misapplied.

But a more material question is, whether the certificate filed in this case is valid for any purpose. The statute requires that the claimant shall describe the premises and the amount claimed as a lien thereon in his certificate, which must be in writing, subscribed and sworn to, the amount being stated as the amount justly due so near as the same can be ascertained. Does this certificate answer these requisites ? The defendants had three paper mills with their appurtenances, two of them on one piece of land, and one on an entirely separate piece, and the contract under which the lien is claimed was that the plaintiffs should furnish such an amount of lumber and other materials as should be wanted for the erection of additions to, and for the completion and repair of the three mills, which was to be delivered from time to time to the workmen employed on the mills as they should want them ; and the petitioners were requested to keep an account of the respective materials so furnished to each of the mills, and the account was in fact thus kept with each mill separately.

The case therefore does not differ materially from a contract to furnish all the lumber or other material which a builder may require who contemplates building several houses on different lots, (and whether in the same town or not would seem to make no difference,) for which separate accounts with each house are to be kept. Now the lien under such a contract,

if it indeed amounts to a lien, or is any thing more than a contract for the sale of merchandise the amount or quantity of which is to be determined by the amount wanted for certain purposes, must, as we think, be a separate and distinct lien on each separate building with its appurtenances; and there was therefore in this case, not one lien on three buildings, but three liens, each for the amount of the material that was delivered for the erection or repair of the particular mill upon which in point of fact it was put. But in the certificate the three mills are all included together, and a lien claimed on them all for the gross amount of the materials furnished for each and all of them together, thus attempting to make the whole three mills together liable for the materials furnished for each one separately. We can not think that this was intended to be allowed by the statute, which, as it gives peculiar privileges to certain creditors, contrary to the general policy of our law, which favors an equal distribution of the effects of insolvents, should, as we think, be construed with reasonable strictness. If such a course as was here attempted could be justified, then it would seem to follow that general contracts with builders to furnish materials for such houses as they might build within any limited time, or perhaps indefinitely, would bind all the buildings together for the materials furnished for all, and the inconvenience and injury to persons who had separate claims for work or materials for each of the buildings separately would be intolerable. The order in which liens take precedence, which by the statute is to depend upon the commencement of the services or of the furnishing of the materials, would, by this course, be so far disturbed, that the law intended for the protection principally of mechanics, would frequently be perverted to their great injury, by making their claims subject to the prior claims of merchants, whose liens may have had their commencement in the furnishing of materials for buildings completed before their work commenced, and of which they had no knowledge. We think therefore that this certificate neither described the premises on which the lien was claimed nor the amount of the

claim itself, and therefore was wholly ineffectual to secure the continuance of it.

There were other points made in the case which we have not examined, because we are satisfied on the point just stated that the plaintiffs can take nothing by their bill. Much reliance however was placed by the counsel for the defendants upon certain receipts given by the plaintiffs, which were supposed to have extinguished this lien if it ever existed ; and the case of *Rose* v. *Persse & Brooks Paper Works*, 29 Conn., 256, was relied upon in support of their views on this point. It is true that the receipts in this case are very similar to the receipts mentioned in the case cited, which the court was inclined to think discharged the accounts for which they were given. No distinction can be made, we think, between a receipt in full, and a receipt which expresses upon its face that what was received was in payment of the account, since a receipt in full, unexplained, means full payment. It is worthy of remark however, that in the case referred to no distinction was suggested by counsel or noticed by the court, in respect to its effect upon the security or lien, of payment of the account by the substitution of the notes of the debtor accepted or received in payment therefor, and a payment in cash, which, of course, would so extinguish the debt, both in law and in equity, that the security, whether by way of lien or otherwise, would fall with it. Considering therefore that what was said in that case, undoubtedly correct in respect to an action at law upon the original account, was not necessary at all to the decision of the case, one decisive point in which was as in this case the invalidity of the certificate, we think the question of the effect of a payment by the substitution of another security for the debt, upon a lien such as is supposed to have existed in this case, ought still to be left as an open question, notwithstanding the remarks made in the case alluded to.

The superior court is advised to dismiss the plaintiffs' bill.

In this opinion the other judges concurred.