## Case No. 1,232.

### BEERS et al. v. KNAPP et al.

[5 Ben. 104.][1]

District Court, D. Connecticut. April Term, 1871.

MECHANIC'S LIEN—PAYMENT BY NOTE—FIXTURES.

1. K. and F. filed a mechanic's lien under the statute of Connecticut, for work and materials furnished to, and done for, the bankrupts, partly under a special contract and partly under a general agreement. They had agreed to take $3,000 worth of the stock of the company as part payment, but they had paid $1,500 on account of it. They had also received three notes of the bankrupts, two of which they had passed away, and one they had procured to be discounted, but on maturity had taken them all up with their own money. Their certificate of lien placed the lien on the "factory and other buildings, * * * for services rendered and materials furnished in the construction of said buildings, and for repairs done thereon." The assignees filed a bill for the discharge of the lien. *Held*, that liens of this character are to be construed with reasonable strictness; that this lien would not include machinery or fixtures not necessarily connected with and forming part of the buildings themselves, nor fences, nor blocks nor timber for trip-hammers or any other supports for machinery, which could be put in or taken out without disturbing the building.

2. That the promissory notes were not to be treated as taken in payment.

[See Allen v. King, Case No. 226; Peter v. Beverly, 10 Pet. (35 U. S.) 532.]

3. That the amount still due on the stock was a payment.

[In equity. Suit by Lewis F. Beers and Francis H. Nash, as assignees of the Allerton Iron Works Manufacturing Company,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

bankrupts, against Burr Knapp and Henry R. Fitch, to set aside a mechanic's lien.]

Lewis F. Beers, for plaintiffs.
Levi Warner, Jr., for defendants.

SHIPMAN, District Judge. This is a suit in equity brought by the assignees of the Allerton Iron Works Manufacturing Company, a bankrupt corporation, against the defendants, praying that a certain alleged mechanic's lien placed by the defendants upon certain real estate of the bankrupts may be declared void, or that, if the same should not be found wholly void, this court proceed to ascertain the amount of such lien, and direct the assignees as to the redemption of the premises and the discharge of the lien.

Though the pleadings and the evidence present the case in a loose, not to say confused, manner, enough can be gathered to enable the court to dispose of the legal questions involved. It appears by the evidence that on the first of August, 1869, the defendants commenced the erection of certain buildings on the land of the bankrupts, described in the bill, and carried the same substantially to final completion. A portion of the work appears to have been performed under a special verbal contract as to price, and the rest done under a general agreement to charge for labor and materials according to their fair value. No controversy has been suggested as to the prices charged. The whole amount of the defendants' claim, including what was done both under the special and general agreements, was $14,202.35, for which they rendered their bill after the work was finished. On the first of February, 1870, the defendants lodged with the proper officer a certificate of lien, as provided by the statute of Connecticut regulating mechanic's liens, claiming a lien to the amount of $8,450, "as nearly as the same can be ascertained." The statute upon which such proceedings rest, has, among other provisions, the following:

"Section 1. Every dwelling-house, or other building, in the construction, erection, or repairs of which, or of any of its appurtenances, any person shall have a claim for materials furnished, or services rendered, exceeding the sum of twenty-five dollars, shall, with the land on which the same may stand, be subject to the payment of such claim; and the said claim shall be a lien on such land, and building, and appurtenances, and shall take precedence of any other lien or incumbrance, which shall originate subsequent to the commencement of such services, or the furnishing of any such materials; * * * and the said premises shall be liable to be foreclosed by such person, in the same manner as if held by mortgage.

"Sec. 2. The debt for services or materials, as aforesaid, shall not remain a lien on such lands or building, for a longer period than sixty days after the person performing such services or furnishing such materials has ceased so to do, unless he shall lodge with the town clerk of the town in which such building is situated, a certificate in writing describing the premises, the amount claimed as a lien thereon, and the date of the commencement of the claim, the same being first subscribed and sworn to as the amount justly due, as nearly as the same can be ascertained, which certificate shall be recorded by the town clerk with deeds of lands."

The lien filed by the defendants was, by its terms, both "for services rendered and materials furnished." The bill avers that this certificate was not filed within the sixty days prescribed by the statute, and that therefore no lien exists. On this point, however, I am satisfied from the proofs, that the defendants did not cease either to perform labor or to furnish materials even upon the main factory building, until after the third of December, 1869. Their certificate having been filed on the first of February following, the sixty days had not expired, and the lien was preserved.

The next question is, how much that is due from the bankrupt is embraced in and secured by this lien? In the first place, the amount of the defendants' bill, none of the items of which are disputed, is $14,202.35. It is agreed on all hands, that of this they received, during the progress of the work, $6,300 in cash, leaving $7,902.35. From this sum must be deducted $1,500, due from the defendants for the stock of the company. It is conceded that they originally agreed to take $3,000 worth of the stock (120 shares at par value, of twenty-five dollars purchase), as part payment for their work and materials. Of this sum they paid $1,500, and no more, leaving $1,500. Of course this latter sum must be deducted from the amount they claim, as by the contract it was to be taken as payment. Deducting this sum, leaves $6,402.35. But the plaintiffs claim that there should be a further deduction of the amount of certain promissory notes given by the bankrupts to the defendants on account of, and during the progress of the work on the buildings. These notes were as follows: One on the 6th of November, for $1,000, payable in three months; one on the 7th of November, for $2,000, payable in four months; and one on the 9th of November, for $1,000, payable in three months, all payable at the First National Bank of South Norwalk. These notes were received by the defendants, the first two were indorsed by them over to parties with whom they were doing business, and the last they got discounted themselves. They were all duly protested for non-payment, and the defendants took them up with their own funds, and have ever since held them, and now produce them in court to be delivered to the assignees. The ground assumed by the plain-

tiffs is, that these notes were received by the defendants, as payment of the amounts therein stated, and therefore, to that extent, absolutely discharged the bankrupt's indebtedness to the defendants. Of this there is not a particle of evidence, while the proof is clearly the other way. There is no agreement between the parties by which these notes, or either of them, were to be received as payment, nor was there any receipt given from which the court can infer such an agreement. It is true that the defendants, in their running account on their own books, credited the bankrupts with these notes at the time they were given, but I apprehend that this act in no way extinguished their lien. The taking of these notes, unless it was expressly agreed that they should operate as payment, in no way affected the original indebtedness except to suspend a remedy on that indebtedness, while the notes were outstanding. This is the settled law of Connecticut. Dougal v. Cowles, 5 Day, 516; Davidson v. Bridgeport, 8 Conn. 477; Bill v. Porter, 9 Conn. 31. The indebtedness in this case not being extinguished, the lien remained. The remarks of the supreme court of this state in Rose v. Persse & Brooks' Paper Works, 29 Conn. 256, and in Chapin v. Same, 30 Conn. 475, have no application to the facts of the present case.

If the case were to rest here, the extent of the defendants' lien would stand fixed at $6,402.25, with interest. But, on examination of the defendants' certificate of lien in connection with the items of their account, I am satisfied that some further deductions ought to be made. The certificate places the lien on the "factory and other buildings, * * * for services rendered and materials furnished in the construction and erection of said buildings, and for repairs done thereon." "Liens of this character are to be construed with reasonable strictness." Chapin v. Persse & Brooks' Paper Works, 30 Conn. 474. The lien in this case, by its express terms, is confined to the buildings, and is for work and materials bestowed on them. This would not include either machinery or fixtures not necessarily connected with and forming part of the buildings themselves. It would not include fences or blocks, or timber for trip-hammers, or any other frame work or supports for machinery which could be put in or taken out without disturbing the buildings. Now, in examining the bill of the defendants in connection with their testimony, it is evident that there are items which go into their alleged claim, that are not covered by their lien. The number, value, and extent of these are not determinable by the proofs in their present state; consequently, the court cannot fix the exact amount of the lien without further inquiry. Perhaps the parties, in the light of these observations, can agree upon the amount of these further deductions. If not, the case must stand over for further proof on this point. When the amount of further deductions is agreed upon, or the proof is submitted on this point, the court will fix the amount of the lien and direct a final decree.