THOMPSON AND PECK, INC. *v.* DIVISION DRYWALL,
INC., ET AL.
(SC 15561)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued April 25—officially released June 10, 1997

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■

*Todd R. Bainer,* for the appellant (plaintiff).

*Thomas H. Connell,* with whom, on the brief, was *Michael C. Ryan,* for the appellees (defendant Century-New Haven Limited Partnership et al.).

*Opinion*

KATZ, J. The sole issue in this appeal is whether unpaid insurance premiums owed by a subcontractor are "materials" or "services" under the mechanic's lien statute, General Statutes § 49-33.[1] We conclude that

---

[1] General Statutes § 49-33 provides: "Mechanic's lien. Precedence. Rights of subcontractors. (a) If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim.

"(b) The claim is a lien on the land, building and appurtenances or lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then on the plot of land and the claim takes precedence over any other encumbrance originating after the commencement of the services, or the furnishing of any such materials, subject to apportionment as provided in section 49-36.

"(c) If any such liens exist in favor of two or more persons for materials furnished or services rendered in connection with the same construction, raising, removal or repairs of any building or any of its appurtenances, or in the improvement of any lot, or in the site development or subdivision of any plot of land, no one of those persons shall have any priority over another except as hereinafter provided.

"(d) If any instrument constituting a valid encumbrance upon such land other than a mechanic's lien is filed for record while the building is being constructed, raised, removed or repaired, or the lot is being improved, or

because such premiums have not enhanced the property in some physical manner, laid the groundwork for the physical enhancement of the property, or played an essential part in the scheme of physical improvement of the property, they are not lienable under § 49-33.

The following facts are undisputed. The plaintiff insurance company, Thompson & Peck, Inc., from September 24, 1989 through August 21, 1990, provided

the plot of land is being improved or subdivided, all such mechanic's liens originating prior to the filing of that instrument for record take precedence over that encumbrance and no such mechanic's lien shall have priority over any other such mechanic's lien. That encumbrance and all such mechanic's liens shall take precedence over any mechanic's lien which originates for materials furnished or services rendered after the filing of that instrument for record, but no one of the mechanic's liens originating after the filing of that instrument for record has precedence over another. If any lienor waives or releases his lien or claim of precedence to any such encumbrance, that lien shall be classed with and have no priority over liens originating subsequent to that encumbrance.

"(e) A mechanic's lien shall not attach to any such building or its appurtenances or to the land on which the same stands or to any lot or to any plot of land, in favor of any subcontractor to a greater extent in the whole than the amount which the owner has agreed to pay to any person through whom the subcontractor claims subject to the provisions of section 49-36.

"(f) Any such subcontractor shall be subrogated to the rights of the person through whom the subcontractor claims, except that the subcontractor shall have a mechanic's lien or right to claim a mechanic's lien in the event of any default by that person subject to the provisions of sections 49-34, 49-35 and 49-36, provided the total of such lien or liens shall not attach to any building or its appurtenances, or to the land on which the same stands or to any lot or to any plot of land, to a greater amount in the whole than the amount by which the contract price between the owner and the person through whom the subcontractor claims exceeds the reasonable cost, either estimated or actual, as the case may be, of satisfactory completion of the contract plus any damages resulting from such default for which that person might be held liable to the owner and all bona fide payments, as defined in section 49-36, made by the owner before receiving notice of such lien or liens.

"(g) In the case of the removal of any building, no such mechanic's lien shall take precedence over any encumbrance upon the land to which such building has been removed which accrued before the building was removed upon the land.

"(h) Any mechanic's lien may be foreclosed in the same manner as a mortgage."

workers' compensation insurance and general employer's liability insurance to the named defendant Division Drywall, Inc. (insured), and Connecticut Drywall, Inc., as named insureds, on an "open account" basis for all work they performed in various states. On or about June 22, 1989, the insured entered into a subcontract with Konover Construction Corporation and Segul Associates and Company, Inc., a "construction joint venture," to perform certain drywall installations at a project in New Haven known as Century Tower, which is owned by the defendant Century-New Haven Limited Partnership (owner). Claiming that it was owed insurance premiums, the plaintiff filed a mechanic's lien against Century Tower in the amount of $67,218. By agreement, the owner, as principal, and the defendant Aetna Casualty and Surety Company (surety), as surety, substituted a bond for the lien in the amount of $81,000. The plaintiff thereafter filed the present action for breach of contract against the insured in the first count and for recovery under the lien against the owner and the surety in the second count.

Pursuant to Practice Book § 378 et seq., the owner and the surety filed a motion for summary judgment as to count two of the complaint, claiming that the mechanic's lien foreclosure action failed as a matter of law because the underlying lien was not based on "materials" or "services" that the legislature intended to be secured by a mechanic's lien. The trial court agreed, as a matter of law, that unpaid insurance premiums could not be secured by a mechanic's lien on a plot of land and, therefore, rendered summary judgment for the owner and the surety on count two of the complaint. This appeal followed.[2]

---

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

While the plaintiff's motion for default against the insured was granted by the trial court as to count one of the complaint, no final judgment appears

We conclude that the legislature did not intend to extend the benefits of the mechanic's lien statute to an insurance agent attempting to collect unpaid premiums from an insured subcontractor. Specifically, we conclude that the trial court properly rendered summary judgment on the second count of the plaintiff's complaint because the legislature did not intend to include within § 49-33 those persons or businesses whose services have not enhanced the property in some physical manner, laid the groundwork for the physical enhancement of the property, or whose work was not an essential part in the scheme of physical improvement.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99,

---

to have been rendered on that count. The plaintiff has appealed from an appealable final judgment, however, because the judgment on count two disposed of all of the plaintiff's claims against the owner and the surety. See Practice Book § 4002B.

105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996).

In the present case, there is no dispute that the plaintiff is an insurance agency and that the mechanic's lien represents unpaid insurance premiums due and owing from the insured. The plaintiff nevertheless contends that the question of whether insurance coverage constitutes materials or services rendered in the construction of the building in issue is a question of fact. We disagree. The interpretation of the language of § 49-33 is an issue of law. See generally *Camputaro* v. *Stuart Hardwood Corp.*, 180 Conn. 545, 429 A.2d 796 (1980). In the absence of any issue of fact, we are left to decide whether the trial court properly concluded that the mechanic's lien failed as a matter of law because "unpaid insurance premiums cannot be secured by a mechanic's lien" because "under the mechanic's lien statute 'materials' and 'services' do not include insurance premiums."

The process of statutory interpretation involves a reasoned search for the intention of the legislature. Under our rules of statutory construction, we are guided by the words of the statute itself, the legislative history and circumstances surrounding its enactment, the legislative policy the statute was designed to implement, and its relationship to existing legislation and common-law principles governing the same subject matter. *State* v. *Ledbetter*, 240 Conn. 317, 327–28, 692 A.2d 713 (1997).

"The guidelines for interpreting mechanic's lien legislation are [equally] well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law; *Camputaro* v. *Stuart Hardwood Corporation*, [supra, 180 Conn. 550]; *Gruss* v. *Miskinis*, 130 Conn. 367, 370, 34 A.2d 600 (1943); its provisions should be liberally construed in order to implement its remedial purpose of furnishing security

for one who provides services or materials. *H & S Torrington Associates* v. *Lutz Engineering Co.*, 185 Conn. 549, 553, 441 A.2d 171 (1981); *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.*, 183 Conn. 108, 115, 438 A.2d 834 (1981). Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction. *Camputaro* v. *Stuart Hardwood Corporation*, supra, 551; *Stone* v. *Rosenfield*, 141 Conn. 188, 191, 104 A.2d 545 (1954). Finally, the provisions of our statute differ sufficiently from the mechanic's lien legislation of other states so that precedents elsewhere are of limited utility in the interpretation of our [statute]. *Camputaro* v. *Stuart Hardwood Corporation*, supra [551]; *New Haven Orphan Asylum* v. *Haggerty Co.*, 108 Conn. 232, 236, 142 A. 847 (1928)." (Internal quotation marks omitted.) *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 364–65, 585 A.2d 1210 (1991).

Pursuant to § 49-33, the persons entitled to claim a mechanic's lien are those who have provided "services" or "materials" in connection with "the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." To date we have declined to address expressly the claim that § 49-33 includes *only* those services and materials that physically enhance the property or that lay the groundwork for physical enhancement. See *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 370 (because legal services are not included within § 49-33, court need not decide whether physical enhancement test is required). Nevertheless, our cases reflect a distinction between services and materials that have directly shaped the liened property and those that have not. Id., 368.

Prior to the statute's amendment by the legislature in 1974, our cases construing "the language of [§ 49-33]

. . . required, as a condition of lienability, that the work done be incorporated in or utilized in the building (or the appurtenance) to be constructed, raised, removed or repaired. . . . Our other cases . . . consistently . . . insisted that mechanic's lien work be wrought into the liened property in some fashion. Thus the installation of fixtures that do not become part of the realty; *Hartlin* v. *Cody*, 144 Conn. 499, 506, 134 A.2d 245 (1957); or of electrical work that is not permanently attached to the realty; *Stone* v. *Rosenfield*, [supra, 141 Conn. 192]; *Abbadessa* v. *Puglisi*, 101 Conn. 1, 124 A. 838 (1924); the removal of pipe from one building that is not incorporated into the building that is its replacement; *Hillhouse* v. *Duca*, 101 Conn. 92, 101, 125 A. 367 (1924); and the furnishing of materials or equipment that is not shown to have gone into the construction or repair of a building; *Lewin & Sons, Inc.* v. *Herman*, 143 Conn. 146, 150, 120 A.2d 423 (1956); *Chapin* v. *Persse & Brooks Paper Works*, 30 Conn. 461, 473 (1862); *Rose* v. *Persse & Brooks Paper Works*, 29 Conn. 256, 267–68 (1860); [were] all unlienable. *Balch* v. *Chaffee*, 73 Conn. 318, 321, 47 A. 327 (1900), did hold lienable as an appurtenance the construction of an artesian well not physically connected to the house which it was to serve, but *Balch* v. *Chaffee*, supra, 320, describes the category of appurtenance as one of detached *structures* . . . and its holding, thus limited, is therefore consistent with the structural constraints that our other cases . . . uniformly imposed." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Camputaro* v. *Stuart Hardwood Corp.*, supra, 180 Conn. 552–53.[3]

In 1974, the legislature extended the reach of a mechanic's lien, under § 49-33, to encompass claims

---

[3] In *Marchetti* v. *Sleeper*, 100 Conn. 339, 342, 123 A. 845 (1924), this court held that an architect's plans and specifications constituted lienable services rendered in the construction of a building. We noted, however, that "there can be no lien until some actual or theoretical increment of value has attached itself to the land by the commencement of the building . . . ." Id.

for materials furnished or services rendered "in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." Public Acts 1974, No. 74-310, § 1. A key purpose of the amendment was to eliminate the requirement that the work be incorporated or utilized in a building or appurtenance and to extend the coverage of § 49-33 to two distinct types of services: (1) services rendered in the improvement of any lot; and (2) services rendered in the site development or subdivision of any plot of land. "[T]he phrase 'improvement of any lot' was intended to include the same types of services embraced by the phrase 'site development or subdivision of any plot of land.' The only distinction intended by the legislature was between services benefiting particular lots and those benefiting the subdivision as a whole." *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 367.

We have also decided that to be the subject of a mechanic's lien, the materials for which a lien has been claimed must not merely have been furnished for, or delivered to the site of, the particular building or improvement, but must actually also have been used in its construction. *Lewin & Sons, Inc.* v. *Herman*, supra, 143 Conn. 150 (where some plumbing materials represented by mechanic's lien were used elsewhere, plumber not entitled to full amount claimed by lien). The rationale for this rule is that it is equitable to grant a lien against property that has increased in value by virtue of the use of materials and, conversely, that it is not equitable to burden the property with a lien to secure the price of materials that never entered the construction. Similarly, we have construed the meaning of "services" to be confined to services that are of a mechanical nature or to those services related to the construction of a building or skilled workmen using tools, machinery and other equipment to improve the

land. See *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 367.

The distinct difference between insurance providers and the types of services that we have indicated fall within the scope of § 49-33 is apparent. Id., 368. Historically, our cases construing the statute have required as a condition of lienability that the work done be *incorporated in* or *utilized in* the building to be constructed, raised, removed or repaired or in the improvement of any lot or subdivision. Moreover, the fact that the legislature consistently has referred to a "mechanic's lien" is some evidence of whom the legislature intended to be benefitted by the lien. "A 'mechanic' [has been described] as a skilled worker who brings about a result by the use of tools, machines or equipment. See Random House Dictionary of the English Language (Unabridged Ed.)." *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 368.

With this background in mind, we conclude that, like legal services, § 49-33 does not extend to services not directly associated with the physical construction or improvement of the land. Our decision is bolstered by reference to statutes from other jurisdictions that, although sufficiently different such that the decisions of courts interpreting their terms are of limited significance, are nevertheless useful for comparison purposes. Unlike statutes in jurisdictions where insurance premiums are specifically defined as material furnished to a contractor; see, e.g., *State ex rel. Mountain States Mutual Casualty Co.* v. *KNC, Inc.*, 106 N.M. 140, 141, 740 P.2d 690 (1987) (" 'worker's compensation insurance furnished to . . . subcontractor . . . is hereby defined to be material' " [citation omitted]);[4] § 49-33

---

[1] The court in *State ex rel. Mountain States Mutual Casualty Co.* v. *KNC, Inc.*, supra, 106 N.M. 141–42, held that premiums for subcontractors' workmen's compensation insurance constituted "material" furnished to subcontractors within contemplation of the Mechanic's Lien Act based upon

does not contain express language permitting a lien upon premises the value or condition of which has not been benefited for items that have not improved the property. Although § 49-33 has been amended to extend the availability of a mechanic's lien; see Public Acts 1974, No. 74-310, § 1; the statute has not been amended to include services and materials that have not enhanced the property in some physical manner, laid the groundwork for the physical enhancement of the property or that did not play an essential part in the scheme of physical improvement.

We find further support for the conclusion that the insurance premiums owed by the insured are not lienable as materials or services by a practical construction of the statute. "[G]eneral words and phrases may be restricted in meaning to adapt their meaning to the subject-matter in reference to which they are used." *Barber* v. *Morgan*, 89 Conn. 583, 588, 94 A. 984 (1915). "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Kron* v. *Thelen*, 178 Conn. 189, 192, 423 A.2d 857 (1979). Interpreting § 49-33 to include insurance premiums could lead to the filing of mechanic's liens by a wide range of parties who provide services to builders and developers, such as real estate agents who are instrumental in the purchase of land and advise as to its potential uses, or financial advisers such as

the language of N.M. Stat. Ann. § 48-2-17 (Michie 1978 and Sup. 1985), which provides "[u]npaid premiums or charges for the furnishing of workmen's compensation insurance furnished to any contractor or subcontractor, who is required by the terms of his contract or by law to obtain and carry such insurance, shall be and is hereby defined to be material furnished to the contractor or subcontractor for use in the performance of the contract, and the person, firm or corporation so furnishing the same shall have the same rights and remedies against any performance bond given in connection with such contract as if the workmen's compensation insurance so furnished were physical property, and as though a lien had been filed against the improved premises, but shall have no lien against the improved premises."

bankers and accountants, giving them priority over any other encumbrance originating after the commencement of services or the furnishing of materials. See General Statutes § 49-33 (c); see also *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 371; *Solomon* v. *Pace*, 115 Conn. 702, 160 A. 428 (1932). "Although as a general matter our mechanic's lien statute must be liberally construed; *H & S Torrington Associates* v. *Lutz Engineering Co.*, supra, [185 Conn.] 553; we refuse to adopt an interpretation of § 49-33 (a) that could lead to such a fundamental change in our mechanic's lien statute absent clear evidence that the legislature intended such a far reaching result." *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 371.

Finally, we must acknowledge the realities of the manner in which the construction world operates. At the request of the owner of the property, general contractors typically require subcontractors to furnish mechanic's lien waivers from all their material suppliers. These suppliers generally are the standard materialmen who furnish actual materials such as lumber, electrical and plumbing fixtures, concrete, and the like. Were insurance agents to be included in the list of those from whom waivers are likely to be sought, the list, and indeed the possible candidates no longer limited by their direct contribution or essential link to the project, could be endless. Rather than serving to expedite matters and facilitate the payment process, the application of § 49-33 to the subcontractor's insurance provider would have the opposite and deleterious effect.

The judgment of the trial court is affirmed as to the second count of the complaint.

In this opinion the other justices concurred.