[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT #121
On September 15, 1997, the plaintiff, Candelora Enterprises, Inc. (Candelora), doing business as Taconic Wire, filed a five count complaint against the defendants, Richard Weir (Weir) and Metal Process Assistance. Inc. (Metal Process). A prior federal action between these parties undergirds the present action; thus, the following background information is provided, having been drawn from facts alleged in the Candelora complaint and from supporting documentation filed by the parties both in this action and in the underlying federal action.
Candelora is in the business of manufacturing and selling wire and wire products for the bookbinding and fastener industries. Weir Aff., dated November 3, 1997, ¶; 4. Candelora employed Weir from March 18, 1991 to December 22. 1994 when Weir resigned. In the course of his employment and for his employer, Weir helped to design, test and successfully install a machine, called a dancer and spooler, which efficiently reduces wire to diameters desired by customers, and then moves that wire from drawing machines to small spools so that the wire can be readily transported and sold. Weir Aff., dated November 3, 1997, Ex. A., p. 3. CT Page 13404
By complaint dated January 3, 1995, Candelora brought an action in the United States District Court for the District of Connecticut, captioned Candelora Enterprises. Inc. d/b/a TaconicWire v. Weir (the federal action). In this action, Candelora alleged a proprietary interest in (1) the company's manufacturing processes; in (2) its pricing, customer and supplier lists; and in (3) the dancer and spooler machine which, according to Candelora, gave it a competitive advantage in the market. Weir Aff., dated November 3, 1997, Ex. A, p. 3. In its action against the defendant, the plaintiff alleged that the defendant removed computer programs, computer files and mechanical sketches of the dancer/spooler when he resigned. Weir Aff., dated November 3, 1997, Ex. A. p. 5-6. The complaint alleged that the removal constituted wrongful misappropriation of confidential and proprietary information in violation of General Statutes § 35-50 (count one); wilful and malicious misappropriation in violation of General Statutes § 35-53 (count two); common law conversion (count three); theft of computer data in violation of General Statutes § 52-570b (count four); violation of General Statutes § 42-110 (CUTPA) (count five); and finally, breach of an employee's fiduciary duties (count six). Weir Aff., dated November 3, 1997, Ex. A, p. 7-8. A temporary restraining order was entered against the defendant by the court, Dorsey, J., on January 4, 1995. Weir Aff., dated November 3, 1997, Ex. B, ¶; 1.
By General Release and Settlement Agreement, dated January 25, 1995, Candelora agreed to dismiss the federal action[1]
with prejudice against Weir and to move to have the temporary restraining order dissolved. Weir agreed that for a period of two years, he would not enter into an employment or agency relationship with any of the following, companies, their subsidiaries, affiliates, divisions and successors:[2] (1) Stanley Bostich Co.; (2) Chicago Steel and Wire Co.; (3) S D. Wire Co.; (4) Southern Steel Wire Co.; and (5) Stitching Wire Warehouse Co. (the Wire companies). Weir Aff., dated November 3, 1997, Ex. B., ¶; 3. In addition, Weir agreed that he would not "discuss, reproduce, or provide information pertinent to the dancer and spooler utilized by [Candelora] with the Wire companies, including their subsidiaries, affiliates, divisions and successors." Weir Aff., dated November 3, 1997, Ex. B., ¶; 3.[3]
Weir avers that subsequent to the parties' execution of the settlement agreement, he formed Metal Process Assistance. Weir CT Page 13405 Aff., dated November 3, 1997, ¶; 7. Metal Process is in the business of producing redrawn wire and fasteners and competes with Candelora by supplying redrawn wire and fasteners to Candelora's customer, Stanley Bostich Co. Id., ¶; 27. Weir avers that presently he has use of the machines originally built for ABCO because ABCO could not use the machines as it had originally planned. Id., ¶; 33. The president of ABCO, Mark Abraham, avers in his deposition, that he agreed to allow Weir and Metal Process to use the equipment as ABCO could not use them, but should ABCO want them for future use, they would be returned in first class condition. Pl.'s Mem. Supp. Summ. J., Ex. D., Abraham Deposition, dated February 12, 1998, p. 43. Pursuant to the same agreement, ABCO also allowed Weir to take over the space ABCO had leased for operations as ABCO would not be using the space. Pl.'s Mem. Supp. Summ. J., Ex. D., Abraham Deposition, dated February 12, 1998, pp. 43-4.
On September 15, 1997, Candelora filed a five count complaint, alleging breach of the settlement agreement and breach of the implied covenant of good faith and fair dealing (count one); misappropriation and disclosure of trade secrets in violation of General Statutes § 35-51 (d) (count two); tortious interference with contract (count three); fraudulent inducement to contract (count four); and violation of Connecticut's Unfair Trade Practices Act (CUTPA) (count five).
Weir and Metal Process filed an answer, special defenses, and a counterclaim on August 25, 1997. The counterclaim is not pertinent to this motion for summary judgment. In their first special defense, they asserted that Candelora voluntarily relinquished any and all claims against them by the settlement agreement, therefore, Candelora's present claims are barred by waiver. In their second special defense, Weir and Metal Process asserted that Candelora's execution of the General Release estops it from bringing the present claims. their third special defense, Weir and Metal Process asserted that Candelora's claims are predicated on conduct occurring prior to the settlement agreement and therefore the claims are barred by the release.
Weir and Metal Process filed their motion for summary judgment (#121) on November 3, 1997, on the ground that there is no genuine issue as to any material fact and that they are therefore entitled to judgment as a matter of law.
Weir and Metal Process have filed a memorandum in support of CT Page 13406 their motion for summary judgment, in compliance with Practice Book § 204, now Practice Book (1998 Rev.) § 11-10, including (1) an affidavit of Weir; and (2) a copy of the transcript of the May 26, 1998 summary judgment motion hearing. Candelora filed a memorandum in opposition on May 22, 1998, along with (1) the certified deposition testimony of Weir taken January 9, 1995, in the underlying federal action; (2) the certified deposition testimony of Candelora's witness, Mark Abraham, taken February 12, 1998; and (3) the certified deposition testimony of Candelora's witness, Donald Pardon, taken February 12, 1998.[4]
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as . . matter of law. . ."Thompson and Peck. Inc. v. Division Drywall. Inc., 241 Conn. 370,374, 696 A.2d 326 (1997).
 A. Breach of Settlement (Count One)[5]
With respect to count one, Weir argues that he did not violate the settlement agreement forbidding his acting as an employee, agent or consultant to Bostich Co. See Weir Aff., p. 3, ¶; 21. Weir also avers that he did not discuss, reproduce or provide information regarding Taconic's dancer and spooler to the designated wire companies. Id., ¶; 22. Weir asserts that he and Metal Process are independent contractors to Bostich: (1) Bostich orders goods and Weir and Metal Process merely supply them; (2) Bostich has no control over the methods or means of production; and (3) Bostich provides no work space for Weir or for Metal Process, nor does it dictate the time that they should spend on any project. Id., ¶¶ 27-30; Defs.' Mem. Supp. Summ. J., p. 11. Weir additionally avers that raw materials may or may not be supplied in its production for Bostich. Id., ¶; 31.
Candelora argues in opposition that issues of fact exist as to whether Weir and Metal Process were subsidiaries, affiliates or agents of Bostich. In support. Candelora has supplied the affidavit of one Marcel Van Wolvelard, who avers that in the course of his attempts to sell air filtration products to Weir and Metal Process, Weir "freely admitted" that Bostich was paying for an expansion of Metal Process[6] and that Weir also said that he sold all of his products to Bostich, such that Weir functioned "just like a subsidiary."[7] In support of its claim that an issue of fact exists as to whether Bostitch and Metal CT Page 13407 Process are affiliates, Candelora submits the above cited Van Wolvelard averments together with an averment by Anthony Candelora that Bostich provides the packaging components for the products it buys from the defendants.[8] Finally, Candelora argues that although Weir and Metal Process maintain that they were independent contractors to Bostich, sufficient indicia of control exist to raise an issue of fact as to whether Weir and Metal Process acted as the agents of Bostich. Again, Candelora cites to such "indicia" in the Wolvelard affidavit as well as in the Weir affidavit: the alleged fact that Weir and Metal Process supply all of Bostich's products;[9] the alleged fact that Bostich provides Weir and Metal Process with raw materials for their product;[10] and the alleged fact that Bostich provided for the start up of Metal Process and has contributed to its maintenance and expansion.[11]
"[A] party seeking summary judgment has the burden of showing the nonexistence of any material fact. . ." Home Ins. Co. v.Aetna Life Casualty, Co., supra, 235 Conn. 202. "It is especially appropriate to hold an affidavit submitted by a moving party to a stringent standard." Evans Products Co. v. ClintonBuilding Supply. Inc., 174 Conn. 512, 516, 391 A.2d 157 (1978). Accordingly, the "self serving affidavits of moving parties are insufficient to support a motion for summary judgment." Grahamv. Posta, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 310102, (October 8, 1997, Melville, J.) (finding as self-serving, home owners' affidavit that they had not negligently supervised their home as they had locked it, were unaware of nephew's party, and had not met assault victim or perpetrator). See also Williams v. Priddy, Superior Court, judicial district of Waterbury, Docket No. 118456, (January 18, 1996, Fasano, J.) (finding that summary judgment movant's self-serving affidavit that plaintiff was the sole proximate cause of an auto collision was not conclusive as a matter of law particularly were issues of credibility and admissibility at trial remain); Krider v. Zimmerman, Superior Court, judicial district of New London at Norwich, Docket No. 107282, (December 5, 1996, Booth, J.) (finding that movant's sworn affidavit, in which she denies owning, possessing. controlling or maintaining the area where the alleged slip and fall occurred, is self-serving and is not conclusive as a matter of law).
Weir's affidavit is self-serving and thus insufficient to establish as a matter of law that neither Weir nor Metal Process breached the settlement agreement provisions. Therefore, the CT Page 13408 motion for summary judgment as to count one is denied.
 B. Res Judicata (Counts Two through Five)
Weir further argues that he is entitled to summary judgment as a matter of law as to counts two through five because these counts rely upon the same facts which underlay the prior federal action, an action which was dismissed by stipulated judgment and which is therefore res judicata for purposes of this present action.
Candelora argues in opposition that res judicata does not apply where a prior action has been settled as a result of the fraud of one of the parties. Pl.'s Mem. Supp. Summ. J., p. 28. Candelora concludes that "[because] there are material issues of fact regarding the commission or fraud in the procurement of the settlement of the underlying action, summary action must fail in this case." Id.
As a threshold matter, "res judicata must be pleaded by a defendant as an affirmative defense." Carnese v Middleton,27 Conn. App. 530, 535, 608 A.2d 700 (1992); Practice Book § 164, now Practice Book (1998 Rev.) § 10-50. Because, however, Candelora has failed to object, the requirement is waived.Carnese v. Middleton, supra, 27 Conn. App. 535.
Under "[the] doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them on the same claim." (Citation omitted.) Mazziotti v. Allstate, 240 Conn. 799, 812,695 A.2d 1010 (1997). A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." Connecticut Natural Gas. Corp. v. Miller,239 Conn. 313, 322, 684 A.2d 1173 (1996).
"A settlement prior to the completion of trial operates as res judicata to the same extent as a judgment or decree rendered after answer and contest." (Internal quotation marks omitted.)Gagne v. Norton, 189 Conn. 29, 31, 453 A.2d 1162 (1983). "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." Nemaizer v.Baker, 793 F.2d 58, 60 (2d Cir. 1986). "Such a dismissal CT Page 13409 constitutes a final judgment with the preclusive effect of res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." Id., 61. "A cause of action [to which res judicata applies] is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." Daoust v.McWilliams, 49 Conn. App. 715, 721, ___ A.2d ___ (1998).
To discern whether the General Release and Settlement Agreement, which provides for dismissal with prejudice of the civil action, constitutes a final judgment with the preclusive effect of res judicata as to Candelora's present claims, the court must compare the claims alleged in the federal action with those claims alleged in the present action.[12] In the underlying federal action, Candelora alleged that Weir removed computer programs, computer files and mechanical sketches of the dancer/spooler when he resigned. Weir Aff., dated November 3, 1997, Ex. A, p. 5-6. The complaint alleged that said removal constituted wrongful misappropriation of confidential and proprietary information in violation of General Statutes § 35-50 (count one); wilful and malicious misappropriation in violation of General Statutes § 35-53 (count two); common law conversion (count three); theft of computer data in violation of General Statutes § 52-570b (count four); violation of General Statutes § 42-110 (CUTPA) (count five); and finally, breach of an employee's fiduciary duties (count six). Weir Aff., dated November 3, 1997, Ex. A, p. 7-8.
The court observes that count two contains four separate allegations: (1) that the defendant Weir misappropriated trade secrets by disclosing same prior to January 25, 1995; (2) that the defendant Weir misappropriated trade secrets by disclosing
same since January 25, 1995; (3) that since January 25, 1995, the defendant Metal Process has misappropriated trade secrets byacquiring same; and (4) that since January 25, 1995, the defendant Metal Process has misappropriated trade secrets by disclosing same." See Complaint, Second Count, ¶; 20. General Statutes § 35-51 (b) provides that "`[m]isappropriation' means . . . (1) [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means or . . . (2) disclosure or use of a trade secret of another without express or implied consent. . ." (Emphasis added.) Because the settlement agreement merely addresses the underlying federal claim for CT Page 13410 misappropriation by "acquisition of a trade secret"; Weir Aff., dated November 3, 1997, Ex. A., p. 5-6; it does not have preclusive effect over count two, a claim for "disclosure or use of [a] trade secret." Complaint, Count 2, ¶; 2. The present claim for misappropriation by disclosure would necessarily entail recitation of facts not relevant to the underlying federal claim for disclosure by acquisition of trade secrets.[13] Res judicata applies to "that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." (Brackets omitted.)Daoust v. McWilliams, supra, 49 Conn. App. 721. The Weir and Metal Process motion for summary judgment as to count two, that they disclosed trade secrets, is therefore denied.
In count two, Candelora also alleges that Metal Process acquired trade secrets. Weir argues that the settlement agreement has preclusive effect over this claim because he owns Metal Process. Weir's ownership averment; Defs.' Mem. Supp. Summ. J., p. 14; however, does not resolve the question of whether "such an identification of interest" exists between the parties as to constitute privity." Mazziotti v. Allstate, supra,240 Conn. 814-15.[14] Weir and Metal Process have failed therefore to put forth evidence in support of this claim that privity exists between them. The court can not conclude as a matter of law that the settlement provisions would necessarily have preclusive effect over claims brought against Metal Process for misappropriation by acquisition of trade secrets.
Similarly, the settlement agreement would not have preclusive effect as to count three. In count three, Candelora alleges that Weir and Metal Process tortiously interfered with Candelora's relationship with Stanley Bostich company by "providing orcausing others to provide Bostich company with confidential pricing information which Weir acquired during the course of his employment with the Plaintiff." Said claim is identical to the claim in count two that Weir and Metal Process disclosed trade secrets. As we have indicated above, the settlement agreement, which addressed facts alleged in the underlying federal action showing that Weir acquired confidential information, does not have preclusive effect over the present claim that Weir and Metal Process disclosed confidential information. In addition, Weir and Metal Process also argue that the settlement agreement has preclusive effect over another claim that Candelora raises in count three: that Weir and Metal Process tortiously interfered with Candelora's relationship with Stanley Bostich by providing CT Page 13411 services and information to Bostich in violation of the terms of the settlement agreement. This claim is for injury arising from breach of the settlement agreement. It is patent that the settlement agreement could not possibly have preclusive effect over its own breach.[15]
The settlement agreement would not have preclusive effect as to count four. Count four alleges that Weir fraudulently induced Candelora to settle the underlying federal claim by giving fraudulent testimony at his deposition on January 9, 1995. As this claim is patently one which could not have been brought in the underlying federal complaint, the agreement settling said underlying federal complaint could not possibly have any preclusive effect.
The settlement agreement would not have a preclusive effect with respect to count five. Count five realleges the acts described in counts one through four and concludes that they constitute unfair and deceptive trade practices in violation of General Statutes § 42-110a (CUTPA). As a threshold matter, count one, the claim for breach of the settlement agreement, patently could not have been brought in the underlying CUTPA claim. Thus, the agreement settling the underlying CUTPA claim does not have preclusive effect over the present CUTPA claim as to count one. As to counts two through four, which also form the basis of the present CUTPA claim, the asserted facts are that: Weir and Metal Process disclosed trade secrets and that Metal Process acquired trade secrets (count two); tortiously interfered with Candelora's contract with Bostich by disclosure and by breach of the settlement agreement (count three); and fraudulently induced Candelora to settle (count four). By contrast, the facts which form the basis of the underlying CUTPA claim are that Weir removed from the Candelora's premises, material in which the Candelora had a proprietary interest: its computer programs, its files and its mechanical sketches of the dancer and spooler machine. Weir Aff., dated November 3, 1997, Ex. A, p. 5-6. The agreement settling the underlying CUTPA claim therefore does not have preclusive effect over the present CUTPA claim because the underlying claim described misappropriation byacquisition which claim is irrelevant to the present claim which describes misappropriation by disclosure.
Thus the Weir and Metal Process motion for summary judgement as to counts two through five is denied as the doctrine of res judicata does not operate to bar the claims which the plaintiff CT Page 13412 brings in present action.[16]
 C. Waiver
Weir and Candelora argue that "the plaintiff has voluntarily and freely waived the right to litigate the present misappropriation claims . . . including . . . relinquishment of all causes of action against Mr. Weir concerning the dancer and spooler constructed for ABCO and communications by Mr. Weir with Bostich alleged in the original action or which might have been alleged." Pl.'s Mem. Supp. Summ. J., p. 18. The court interprets this argument as addressing count two, Candelora's claim that Weir and Metal Process misappropriated trade secrets.
Candelora does not present an argument in opposition.
"Waiver is the intentional relinquishment of a known right."Waddia Enterprises. Inc. v. Hirschfeld, 224 Conn. 240, 251,618 A.2d 506 (1992). "A waiver occurs, therefore, only if there is both knowledge of the existence of the right and intent to relinquish it." Dichello v. Holgrath Corp. , 49 Conn. App. 339,349, ___ A.2d ___ (1998). In addition, a party must "[know] of the existence of the claim and of its reasonably possible efficacy."Jenkins v. Indemnity Ins. Co., 152 Conn. 249, 257-58,205 A.2d 780 (1964).
By the General Release and Settlement Agreement, dated January 25, 1995, "[Candelora waived] . . . any and all claims asserted or which could have been asserted in the civil action, including without limitation claims for or arising under the Uniform Trade Secrets Act . . . common law conversion, computer-related offenses . . . and breach of the fiduciary duties." See Weir. Aff., dated November 3, 1997, Ex. B., p. 4.
Candelora did not waive its right to bring a claim against either Weir or Metal Process for their alleged disclosure of trade secrets after January 25, 1995, as such claim differs from the claim for misappropriation by acquisition brought in the original action. An issue of fact exists as to whether Candelora knew that it had a claim against Weir for the disclosure of trade secrets that occurred prior to January 25, 1995. Finally, an issue of fact also exists as to whether privity exists between Metal Process and Weir. Neither Weir nor Metal Process submits evidence to dispel any of these questions of fact. CT Page 13413
Weir and Metal Process have failed to establish as a matter of law that the doctrine of waiver bars Candelora's count two claim and summary judgment is denied.
 D. Estoppel
Weir and Metal Process argue that "after releasing Mr. Weir from its trade secret claims and restricting Mr. Weir's employment opportunities without foreclosing Mr. Weir from direct competition as an independent contractor, Plaintiff cannot now seek to prevent Mr. Weir from competing by resurrecting its trade secret claims. Estoppel applies to bar such behavior." Pl.'s Mem. Opp. Summ. J., p. 18. Specifically they assert (1) that Candelora represented that by "the Settlement Agreement [it] would relinquish all claims against [Weir] for certain conduct, including conduct related to the testimony given at his deposition"; id., p. 20; and (2) that they relied on said representations by "[expending] time, money, and effort establishing his new business." Id. The court interprets this argument as addressing count two.
Candelora argues in opposition that Weir and Metal Process have failed to satisfy the threshold requirement of their estoppel claim as they have failed to establish that Candelora "engaged in some sort of conduct or [made] declarations which were intended to deceive the Defendants." Pl.'s Mem. Opp. Summ. J., p. 31. Indeed, Candelora argues that it is the victim of the settlement agreement as it was procured by Weir's fraud. "Thus, Weir's conduct in procuring the Settlement Agreement precludes him from claiming the benefit of an estoppel." Id.
"It is well established that any recovery premised on estoppel must be supported by proof of two essential elements: (1) the party against whom estoppel is claimed must be shown to have done or said something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must be shown to have changed its position in reliance on those facts, thereby incurring some injury." Herbert S. Newman Partners v. CFCConstruction Ltd. Partnership, 236 Conn. 750, 768, 674 A.2d 1313
(1996).
Implicit in the Weir and Metal Process argument that the doctrine of estoppel bars Candelora from bringing its present claim for misappropriation of trade secrets (count two) is the CT Page 13414 assumption that the present claim mirrors the trade secret claim which Candelora relinquished by settlement. The first prong of the present estoppel argument necessarily questions, first, whether the claim relinquished by settlement mirrors the present claim. The reasoning which this court employed in denying the Weir and Metal Process motion for summary judgment based on the doctrine of waiver is herein incorporated by reference because the relinquishment argument is merely the waiver argument presented in another guise. Because the court could not find as a matter of law that the present trade secret claim was waived by settlement, the court cannot evaluate whether Weir and Metal Process relied on said alleged waiver. Weir and Metal Process have failed to establish as a matter of law that the doctrine of estoppel bars Candelora's count two claim and summary judgment is denied.
 E. Fraudulent Inducement to Contract
Weir also argues that he did not participate in any fraudulent conduct with regard to his deposition testimony. He argues that his present use of the dancer and spooler machines is not inconsistent with his deposition testimony, given January 9, 1995, in which he averred that "he did not plan to build or market any other dancer/spooler machines." Weir Deposition., dated January 9, 1995, p. 100. The court interprets this argument as addressing count four, Candelora's claim that Weir, by fraudulent deposition testimony, induced Candelora to settle.
Candelora argues in opposition, that "Weir's fraudulent conduct is [evident from both] affirmative misrepresentations as well as [from] non-disclosure [at his federal deposition testimony]." Id., 19. Specifically, Candelora alleges that Weir misrepresented the character of the alleged sale and delivery of the machines to ABCO at the deposition in the federal action. He additionally alleges that at said deposition, Weir was silent "with respect to the arrangement for the use of the Continental Brass Wire leasehold." Id. Candelora concludes that (1) "[the] sale was in reality, nothing more than an artifice to allow Weir to `use' the machines once he had extricated himself from his obligations to Taconic; and that (2) the lease of space by the fictitious Continental Brass was yet another artifice to disguise Weir's plans to open [Metal Process] and compete with Taconic."Id.
"The essential elements of an action in common law CT Page 13415 fraud . . . are: (1) a false representation . . . made as a statement of fact; (2) [which] was untrue and known to be untrue by the party making it; (3) [and which] was made to induce the other party to act upon it; and (4) [upon which] the other party did . . . act . . . to his injury." Barbara Weisman, Trustee v.Kaspar, 233 Conn. 531, 539, 661 A.2d 530 (1995).
"The crux of a fraudulent nondisclosure is . . . failure to disclose known facts and a request or an occasion or circumstance which imposes a duty to speak." (Internal quotation marks omitted.) Marchand v. Presutti, 7 Conn. App. 643, 645,509 A.2d 1092 (1986).
This court observes that the Weir and Metal Process argument fails to address the material allegations of count four. In count four, Candelora alleges that Weir committed fraud: (1) by giving sworn deposition testimony that "certain equipment had been sold and delivered to American Brass Company ("ABCO") and that ABCO would retain said equipment for its own use"; (2) in knowing that said statement was false, but making said statement with the intent to deceive the plaintiff; (3) with the result that the plaintiff was deceived, and, relying on said false statement, signed the settlement agreement. Complaint, Count Four. Nowhere in their argument does Weir or Metal Process address the material issue asserted in count four of whether Weir averred that "certain equipment had been sold and delivered to American Brass Company ("ABCO") and that ABCO would retain said equipment for its own use" and whether the averments are false. Instead, their argument attempts to address another question: whether Weir gave false deposition testimony when he averred that "he had no plans to build or market a dancer/spooler similar to the one that [he] built for Taconic Wire." Weir Deposition, dated January 9, 1995, p. 100. As Weir and Metal Process have failed to meet "the burden of showing the nonexistence of any material fact. . ."; HomeIns. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202; summary judgment as to count four is denied.
 F. Release
Weir and Metal Process also argue that the Candelora's claims are barred because they were released by the settlement. "Plaintiff released and forever discharged Mr. Weir, his heirs, representatives, successors and assigns of all claims including those which were asserted or could have been asserted in the prior civil action." Id., 21. The court interprets this argument CT Page 13416 as addressing counts two through five of the Candelora complaint.
Candelora argues in opposition that "releases . . . are subject to the same rules of construction governing stipulated judgments and settlement agreements." Pl.'s Mem. Supp. Summ. J., p. 32. In addition, Candelora incorporated by reference the arguments it raised in its fraudulent inducement argument. See Pl.'s Mem. Opp. Summ. J., p. 32.
The reasoning which this court employed in denying the Weir and Metal Process motion for summary judgment as to counts two through five based on the doctrine of res judicata is herein incorporated by reference, as the res judicata theory involves the same the question presented here, specifically, whether the General Release and Settlement Agreement disposes of the present claims (counts two through five). Weir and Metal Process have failed to establish as a matter of law that the doctrine of release bars Candelora's count two through five claims and summary judgment is denied.
The defendant's motion for summary judgment is denied.
John W. Moran Judge of the Superior Court